UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUIS SONIER | CIVIL ACTION |
| VERSUS | NO. 16-17289 |
| WINN-DIXIE MONTGOMERY | SECTION A(2) |

## ORDER AND REASONS

Before the Court are several motions. Third Party Plaintiff Winn-Dixie Montgomery, LLC ("Winn-Dixie Montgomery")[1] has filed a **Motion for Summary Judgment on Crossclaim of Winn-Dixie Montgomery Against H & L Construction & Renovation, Inc. (Rec. Dec. 43).** Third Party Defendant Scottsdale Insurance Company ("Scottsdale") opposes this motion. (Rec. Doc. 70). In response to Winn-Dixie's motion, Cross-Defendant H & L Construction and Renovation, Inc. ("H & L") has filed a **Motion for Summary Judgment & Opposition to Winn-Dixie's Motion for Summary Judgment on Crossclaim. (Rec. Doc. 54).** Winn-Dixie Montgomery opposes this motion. (Rec. Doc. 64). Also before the Court is a **Motion for Summary Judgment on Third Party Demand of Winn-Dixie Montgomery Against Scottsdale Insurance Company (Rec. Doc. 44)** filed by Winn-Dixie Montgomery. Scottsdale opposes this motion. (Rec. Doc. 69). Finally, before the Court is a **Motion for Summary Judgment to Dismiss Third-Party Complaint of Winn-Dixie Montgomery, LLC Against Scottsdale Insurance Company (Rec. Doc. 58)** filed by Scottsdale. Winn-Dixie Montgomery opposes this

---

[1] The Court refers to Winn-Dixie Montgomery, LLC as "Winn-Dixie Montgomery" rather than "Winn-Dixie" because Winn-Dixie Stores, LLC is separate entity. Both H & L and Scottsdale rely on this distinction throughout their arguments.

motion (Rec. Doc. 63), and Scottsdale has replied. (Rec. Doc. 69). The motions, set for submission on January 10, 2018, are before the Court on the briefs without oral argument.[2]

This matter was originally set to be tried to a jury on March 12, 2018. However, as the only outstanding issues are legal, the parties have agreed that the remaining motions are adequate to resolve the remaining claims. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds the following: **Winn-Dixie's Motion for Summary Judgment Against H & L (Rec. Doc. 43)** is **DENIED; Winn-Dixie's Motion for Summary Judgment Against Scottsdale (Rec. Doc. 44)** is **DENIED; H & L's Motion for Summary Judgment Against Winn-Dixie (Rec. Doc. 54)** is **GRANTED;** and **Scottsdale's Motion for Summary Judgment Against Winn-Dixie (Rec. Doc. 58)** is **GRANTED.** The Court's reasons are set forth below.

**I.     Factual Background**

This matter originally arose out of claims filed by Louis Sonier ("Sonier") against Winn-Dixie Montgomery and H & L. (Rec. Doc. 10). Sonier alleged that on July 7, 2016, he entered Winn-Dixie grocery store #1430 located at 5400 Tchoupitoulas Street in New Orleans, Louisiana. (Rec. Doc. 1-1, p. 1, ¶ III). Because he is handicapped, Sonier required use of the store's motorized handicapped scooter. Once seated upon the scooter, Sonier proceeded to the men's restroom. Sonier alleged that he entered the men's restroom while still on the scooter and attempted to drive the scooter into the handicapped stall. Sonier then stated that the scooter would not fit through the stall's doorway, forcing him to stand up and walk into the stall without the assistance of the scooter. Thereafter, Sonier alleged that he lost his balance and fell.

---

[2] The Court notes that Scottsdale has requested oral argument (Rec. Doc. 59) in conjunction with its Motion for Summary Judgment. (Rec. Doc. 58). However, the Court does not find that oral argument would be helpful.

However, the facts relevant to the instant motions took place prior to Sonier's July 7, 2016 fall. Winn-Dixie Montgomery is a subsidiary of both Southeastern Grocers, LLC and BI-LO, LLC. ("BI-LO"). (Rec. Doc. 43-1, p.1). Southeastern Grocers, LLC is the parent company of several companies including BI-LO. *Id.* BI-LO is the parent company of Winn-Dixie Stores, Inc. *Id.* Winn-Dixie Stores, Inc. is the parent company of Winn-Dixie Montgomery. *Id.*

On or about October 8, 2015, BI-LO entered into a contract with H & L to renovate the men's restroom at Winn-Dixie store #1430. *Id.* at ¶5. One of the purposes of the renovation was to make the restroom at issue compliant with ADA standards. *Id.* at ¶6. Winn-Dixie Montgomery argues that under the contract between H & L and BI-LO, H & L agreed to indemnify and defend BI-LO and its subsidiaries for any negligence claims arising out of the contract. *Id.* at ¶7. Winn-Dixie Montgomery further contends that H & L agreed to defend and hold harmless BI-LO and its subsidiaries for any additional claims arising out of the contract. *Id.* By letter dated February 27, 2017, Winn-Dixie Montgomery requested that H & L defend and indemnify Winn-Dixie Montgomery for the claims Sonier made against it in the instant matter. *Id.* at ¶8. H & L did not agree, causing Winn-Dixie Montgomery to file the cross-claim at issue against H & L. Winn-Dixie Montgomery also seeks reimbursement of all defense costs and any other costs paid in connection with this litigation.

Winn-Dixie also brought a third party complaint against Scottsdale, in which Winn-Dixie Montgomery alleges that under the contract between H & L and BI-LO, H & L agreed to obtain liability insurance. (Rec. Doc. 28, p. 2, ¶7). Winn-Dixie Montgomery further alleges that pursuant to that contract, BI-LO and its subsidiaries were to be named as additional insureds under that policy. *Id.* Winn-Dixie Montgomery argues that pursuant to the contract, H & L did obtain a policy of liability insurance from Scottsdale. Winn-Dixie Montgomery contends that H & L

provided a certificate of liability insurance naming BI-LO and its subsidiaries, including Winn-Dixie Montgomery, as additional insureds under the policy. Winn-Dixie Montgomery alleges to have specifically requested that H & L and Scottsdale provide a defense to Winn-Dixie Montgomery under the policy issued to H & L by Scottsdale. *Id.* at ¶10. Winn-Dixie Montgomery also seeks reimbursement from Scottsdale for all defense costs and any other costs paid in connection with this litigation.

## II. Procedural Background

Sonier originally filed a Petition for Damages in Civil District Court for the Parish of Orleans on November 3, 2016 before Winn-Dixie Montgomery removed the matter to this Court on December 13, 2016. (Rec. Doc. 1). In his Petition, Sonier alleged Winn-Dixie Montgomery violated the Americans with Disabilities Act ("ADA") and La. R.S. 40:1732 *et seq.*, Louisiana's version of the ADA, for failing to provide a handicapped scooter that would fit into the handicapped restroom stall, and for failing to make the handicapped stall readily accessible and usable by persons with disabilities. (Rec. Doc. 1-1, p. 2, ¶ IV). In addition to the ADA violations, Sonier also alleged that the cause of his accident was "such other acts of negligence as may be proven upon the trial of this matter." *Id.*

On March 6, 2017, Sonier filed an Amended Complaint naming H & L as an additional defendant and bringing identical claims of ADA violations against H & L. (Rec. Doc. 10). Sonier submitted a Motion to Remand to state court on March 22, 2017 (Rec. Doc. 8), which the Court denied on April 4, 2017. (Rec. Doc. 17). On June 15, 2017, Winn-Dixie Montgomery brought the above-mentioned cross-claim against H & L seeking to enforce an agreement that would require H & L to defend and indemnify Winn-Dixie Montgomery for the claims made by Sonier against Winn-Dixie Montgomery. (Rec. Doc. 29). On the same date, Winn-Dixie Montgomery

filed the above-mentioned third party complaint against Scottsdale Insurance Company ("Scottsdale") alleging that Scottsdale is obligated to defend and indemnify Winn-Dixie Montgomery pursuant to an agreement in which H & L obtained a policy of liability insurance with Scottsdale. (Rec. Doc. 28, p. 2, ¶2). Sonier dismissed his claims against H & L without prejudice on December 11, 2017. (Rec. Doc. 45).

On February 16, 2018, the Court dismissed Sonier's claims against Winn-Dixie Montgomery and H & L with prejudice on summary judgment. (Rec. Doc. 91). The only remaining claims are Winn-Dixie Montgomery's third party complaint against Scottsdale (Rec. Doc. 28) and Winn-Dixie Montgomery's cross-claim against H & L. (Rec. Doc. 29).

The remaining parties have filed a multitude of motions in conjunction with Winn-Dixie's cross-claim against H & L and Winn-Dixie's third party complaint against Scottsdale. Those motions are currently before the Court. Specifically, Winn-Dixie Montgomery has filed a Motion for Summary Judgment on Crossclaim of Winn-Dixie Montgomery Against H & L (Rec. Dec. 43), and a Motion for Summary Judgment on Third Party Demand of Winn-Dixie Montgomery Against Scottsdale. (Rec. Doc. 44). H & L has filed a Motion for Summary Judgment & Opposition to Winn-Dixie Montgomery's Motion for Summary Judgment on Crossclaim. (Rec. Doc. 54). Lastly, Scottsdale has filed a Motion for Summary Judgment to Dismiss Third-Party Complaint of Winn-Dixie Montgomery, LLC Against Scottsdale. (Rec. Doc. 58).

On February 27, 2018, the Court held a pre-trial conference with counsel for Winn-Dixie Montgomery, H & L, and Scottsdale present. (Rec. Doc. 92). At the conference, the Court found that proceeding with trial to decide the remaining defense and indemnity issues would be futile. The remaining issues are purely legal, and the motions before the Court are all that is needed for the Court to dispose of the remaining claims. The parties agreed. *Id.*

On April 9, 2018, the Court received a Notice of Bankruptcy and Imposition of Automatic Stay Pursuant to Section 362(a) of Bankruptcy Code. (Rec. Doc. 94). That Notice informs that on March 27, 2018, Winn-Dixie Montgomery filed for Chapter 11 bankruptcy. Pursuant to § 362(a) of the Bankruptcy Code, the filing of Winn-Dixie Montgomery's bankruptcy petition effected an automatic stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code]." 11 U.S.C. § 362(a)(1). Accordingly, this matter was automatically stayed pursuant to the Automatic Stay of the Bankruptcy Code. On July 2, 2018, this Court received Winn-Dixie Montgomery's Notice of Emergence From Bankruptcy and Lifting of Stay. (Rec. Doc. 95). Accordingly, the previous automatic stay affecting Winn-Dixie Montgomery has been lifted, and the instant motions are ripe for the Court's consideration.

**III.   Legal Standard**

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light of the most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Inc. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," the non-movant must come forward with "specific facts" showing

6

a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). Additionally, if the non-moving party would bear the burden of proof for the dispositive issue at trial, then the moving party can satisfy its burden by proving that the evidence in the record contains insufficient proof concerning an essential element of the non-moving party's claim. *Celotex*, 477 U.S. at 325. Once the mover satisfies this burden, the adverse party cannot rely on argument or unsubstantiated assertions, but must produce evidence demonstrating an issue for trial. *Weathersby v. Saks Fifth Avenue*, No. 97–1688, 1991 WL 148441, at *1 (E.D. La. 1999) (citing *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989)).

**IV.     Law and Analysis**

The Court begins its analysis with revisiting some of the findings from its February 16, 2018 Order and Reasons granting summary judgment in favor of Winn-Dixie Montgomery and H & L against Sonier. The Court's ruling on liability in that Order plays a significant role in deciding the instant motions. Additionally, the bulk of the Court's analysis concerns interpreting the contract (hereinafter the "Contract") between BI-LO and H & L, in which H & L agrees to perform work on the Winn-Dixie restroom at issue. The Court will provide a brief description of the Contract's clauses that are relevant to the instant motions. The Court's analysis will then be divided into two additional sections, one concerning the motions and oppositions between Winn-Dixie Montgomery and H & L, the other concerning the motions and oppositions between Winn-Dixie Montgomery and Scottsdale.

## A. The Court's February 16, 2018 Order and Reasons Granting Summary Judgment

As stated above, the Court previously dismissed with prejudice all of Sonier's claims against Winn-Dixie Montgomery and H & L. (Rec. Doc. 91). The Court held that no alleged ADA violation could have caused Sonier's fall or injuries. *Id.* at p. 8. The Court found that the overwhelming amount of evidence provided by Winn-Dixie Montgomery showed that neither the motorized scooter nor the width of the handicapped stall door actually caused Sonier's fall in any way. *Id.* at p. 10. The Court did not reach the question of whether an ADA violation actually occurred because Sonier was clearly unable to show that any potential ADA violation caused his fall.

The Court then addressed Sonier's ordinary negligence allegation. The Court's analysis of Sonier's negligence claims pertained only to Winn-Dixie Montgomery. The Court found that Sonier could not maintain a negligence claim against H & L because the work H & L performed on the restroom in question was completed approximately seven months[3] before Sonier's alleged fall. (Rec. Doc. 91, p. 11 n. 4). Winn-Dixie Montgomery was found not liable for Sonier's fall under his negligence claim. Sonier failed to present sufficient evidence to establish that Winn-Dixie Montgomery caused the fall in any way.

## B. The Contract

On October 8, 2015, BI-LO entered into the Contract with H & L to renovate the men's restroom at Winn-Dixie store #1430 at 5400 Tchoupitoulas Street, New Orleans, Louisiana. (Rec. Doc. 43, Ex. 2, Ex. 3). Michael Mavelle, Director of Risk Management for Winn-Dixie Montgomery, stated in his affidavit that the purpose of the renovation was to "comply with the

---

[3] The Court previously noted that H & L's work was completed approximately eight months before Sonier's fall. However, seven months is a more accurate calculation of the time in between the completed work and the fall.

current 2010 ADA standards for Accessible Design." (Rec. Doc. 43-8). Winn-Dixie Montgomery states that the work on the restroom began on November 30, 2015 and ended on December 11, 2015. (Rec. Doc. 43-1, p. 1).

Winn-Dixie Montgomery argues that under the Contract between H & L and BI-LO, H & L agreed to indemnify and defend BI-LO and its subsidiaries for any claims arising out of the Contract. *Id.* at p. 2. The indemnity clause of the Contract provides as follows:

> **§ 9.15 INDEMNIFICATION**
> **§ 9.15** To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such a claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 9.12.1.

(Rec. Doc. 43-5).

Winn-Dixie Montgomery additionally argues that H & L had a duty to obtain insurance under the Contract to protect it from any liability arising out of H & L's work. (Rec. Doc. 43-1, p. 2). The Contract's insurance clause at issue provides:

> **ARTICLE 17 INSURANCE AND BONDS**
> **§ 17.1** The Contractor shall purchase from, and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, insurance for protection from claims under workers' compensation acts or other employee benefit acts which are applicable, claims for damages because of bodily injury, including death, and claims for damages, other than to the Work itself, to property which may arise out of or result from the Contractor's operations and completed operations under the contract, whether such operations be by the Contractor or by a Subcontractor or anyone directly or indirectly employed by them. This insurance shall be written for not less than the limits of liability specified in the Contract Documents or required by law,

9

whichever coverage is greater, and shall include contractual liability insurance applicable to the Contractor's obligation under Section 9.15. Certificates of Insurance acceptable to Owner shall be filed with the Owner prior to commencement of the Work. Each policy shall contain a provision that the policy will not be cancelled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's Consultant as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by Contractor's negligent acts or omissions during the Contractor's completed operations.

(Rec. Doc. 43-5).

The Contract designates BI-LO, LLC as the "Owner" and H & L as the "Contractor" for the following project: "Winn-Dixie Store—Restroom Remodel—Wave #2, WD #1430—5400 TCHOUPITOULAS STREET, NEW ORLEANS, LA." (Rec. Doc. 54-2).

### C. Indemnity—Winn-Dixie Montgomery and H & L

In interpreting contracts, including indemnity clauses, the Court is guided by the general rules contained in articles 2045—2057 of the Louisiana Civil Code. The interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code. arts. 2045, 2047; *see e.g., Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 93-0911 (La. 1994), 630 So. 2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ. Code art. 2046.

Winn-Dixie Montgomery first argues that, if taken as true, Sonier's original allegations against H & L and Winn-Dixie Montgomery arise out of the work performed by H & L. (Rec. Doc. 43, p. 8). Winn-Dixie Montgomery first relies on *Berry v. Orleans Parish School Board*, wherein the Louisiana Supreme Court applied the rule that "[a] contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed,

and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms." 2001-3238, p. 4 (La. 06/21/02), 830 So. 2d 283, 285 (citing *Perkins v. Rubicon, Inc.*, 563 So. 2d 258 (La. 1990) (citations omitted)).

However, such an argument is putting the proverbial cart before the horse. Winn-Dixie Montgomery contends that pursuant to the Contract between BI-LO and H & L, "H & L Construction agreed to indemnify and defend BI-LO, LLC *and its subsidiaries* for any negligence claims arising out of the contract. (Ex. 2). Additionally, H & L Construction agreed to defend and hold harmless BI-LO, LLC *and its subsidiaries* for any claims arising out of the contract." (Rec. Doc. 43-1) (emphasis added). In response, H & L points out that the Contract is between H & L and BI-LO, and "requires H & L to name 'the Owner, the Architect and the Architect's Consultants' as additional insureds on its policy of liability insurance, not Winn-Dixie Montgomery, LLC." (Rec. Doc. 70, p. 3). H & L also notes that the Contract required "H & L to indemnify and hold harmless 'the Owner, Architect, Architect's consultants and agents, and employees of any of them,' not Winn-Dixie Montgomery, LLC." *Id.* According to its clear and unambiguous terms, Winn-Dixie Montgomery is not a party to the Contract. Neither is Winn-Dixie Montgomery "the Owner, Architect, Architect's consultants [or] agents [or] employees of any of them" as contemplated by the Contract.

In response to this argument, Winn-Dixie Montgomery cites the deposition testimony of the president of H & L, Wayne Herberger. (Rec. Doc. 64, p. 1). Mr. Herberger stated that 99% of all the work performed by H & L is renovation work for Winn-Dixie stores. *Id.* at p. 2. As a result, Winn-Dixie states that "[i]t would simply be disingenuous for H & L Construction to argue

11

that when they entered into the contract with BI-LO, LLC, that they did not understand that Winn-Dixie was a related company." *Id.*

The terms of the Contract are clear and unambiguous. Winn-Dixie Montgomery was not named as a party to the Contract. Nor does the Contract contemplate that H & L would be obligated to indemnify Winn-Dixie Montgomery. Moreover, the insurance clause of the Contract provides that "[t]he Contractor [H & L] shall cause the commercial liability coverage required by the Contract Documents to include . . . (2) the Owner [BI-LO] as an additional insured for claims caused in whole or in part by [H & L's] negligent acts or omissions during [H & L's] completed operations." (58-4, p. 17). As with the indemnity clause, the insurance clause of the Contract only obliges H & L to name BI-LO as an additional insured for claims caused by H & L's negligent acts during the completed operations. Therefore, the Contract did not create an obligation for H & L to indemnify or insure Winn-Dixie Montgomery for Sonier's now dismissed claims.

Moreover, there is no obligation for H & L to indemnify and defend Winn-Dixie Montgomery for Winn-Dixie Montgomery's own alleged negligence. First, this Court previously ruled that Sonier's injuries were not caused by violations of the ADA or by any act of negligence. Therefore, any argument regarding whether H & L agreed to indemnify Winn-Dixie Montgomery for losses that resulted from Winn-Dixie's own negligence is futile.

Secondly, even if Winn-Dixie Montgomery were considered an "Owner" under the Contract, neither the indemnity clause nor the insurance clause would afford Winn-Dixie Montgomery the relief sought. The indemnity clause provides that H & L would indemnify the "Owner" only to "the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable. . . ." (Rec. Doc. 58-4, p. 11). Quite simply, the indemnity clause is only triggered if the

12

Contractor, Subcontractor, or anyone directly or indirectly under their control commits a negligent act or omission. As this Court has previously ruled, such an instance did not occur in this case. The same is true for the insurance clause. That clause discusses H & L naming the Owner as an additional insured under a commercial liability insurance policy, but only for "claims caused in whole or in part by [H & L's] negligent acts or omissions during [H & L's] *completed operations*." *Id.* at p. 17 (emphasis added).[4]

Pursuant to the terms of the Contract, H & L is not obliged to defend and indemnify Winn-Dixie Montgomery against the claims previously brought in this lawsuit. The Court does not read the Contract to include Winn-Dixie Montgomery as an "Owner" under the applicable provisions. Moreover, there has been no finding of negligence on behalf of H & L as the negligence claims against H & L were dismissed months ago. (Rec. Doc. 45). Additionally, as previously found by this Court, Winn-Dixie Montgomery is free from fault. Therefore, any argument by Winn-Dixie Montgomery that seeks to have H & L indemnify and/or insure Winn-Dixie Montgomery for its own acts of negligence is inapposite.[5] For these reasons, **H & L's Motion for Summary Judgment (Rec. Doc. 54) is GRANTED**; Winn-Dixie Montgomery's **Motion for Summary Judgment on Cross Claim of Winn-Dixie Montgomery Against H & L Construction and Renovation, Inc. (Rec. Doc. 43) is DENIED**; and Winn-Dixie Montgomery's Cross-Claim against H & L is **DISMISSED WITH PREJUDICE.**

---

[4] The insurance clause required H & L to name the Owner, the Architect, and the Architect's Consultants as additional insureds for claims caused by H & L's negligence *during* the operations—*i.e.*, restroom renovations. The clause required H & L to name only the Owner as an additional insured for claims caused by H & L's negligence once H & L's operations were *completed.*

[5] The Court agrees with H & L that Louisiana Revised Statute § 9:2780.1 is applicable to this case, and renders null and void any provision in the Contract that requires the indemnitor to indemnify and insure the indemnitee for the indemnitee's own acts of negligence. La. Rev. Stat. § 9:2780.1.

### D. Indemnity—Winn-Dixie Montgomery and Scottsdale

Winn-Dixie Montgomery filed a third party complaint against Scottsdale on June 15, 2017 making a "formal demand on Scottsdale Insurance Company to assume the defense of Winn-Dixie Montgomery, LLC and indemnify Winn-Dixie Montgomery, LLC for any liability in this litigation." (Rec. Doc. 28, p. 3, ¶ 9). Winn-Dixie Montgomery also seeks reimbursement of all defense costs and any other costs paid by Winn-Dixie Montgomery in connection with this litigation. *Id.* Winn-Dixie Montgomery maintains the position that it is an additional insured under the policy issue by Scottsdale to H & L. Accordingly, Winn-Dixie now moves for summary judgment asking this Court to order that Scottsdale defend and indemnify Winn-Dixie Montgomery for the claims brought against it by Sonier. (Rec. Doc. 44, p. 1). Likewise, Scottsdale moves for summary judgment asking this Court to dismiss the third party complaint made against it. (Rec. Doc. 58).

Under Louisiana law, interpretation of an insurance policy is subject to the general rules of contract interpretation, which requires judicial determination of the common intent of the parties to the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994). The intent of the parties, "as reflected by the words in the policy[,] determine the extent of coverage." *Id.* We construe the words of an insurance policy by applying their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning." *Id. See also South Cent. Bell Tel. Co. v. Ka–Jon Food Stores of La., Inc.*, 644 So.2d 357, 360 (La. 1994). When the language of an insurance policy is clear, it must be enforced as written. *Reynolds v. Select Props. Ltd.*, 634 So.2d 1180, 1183 (La. 1994).

At the outset, and in light of the submissions of the parties, the Court addresses Louisiana's law regarding who bears the burden of proving coverage under an insurance policy. First, Winn-

Dixie Montgomery bears the burden of proof as to its status as an insured under the Scottsdale policy. Scottsdale does not bear the burden of negating Winn-Dixie Montgomery's claim to insured status. In Louisiana, an insured must meet the initial burden of establishing that a policy affords coverage for an incident and that the incident falls within the policy's terms. *Russell v. Eye Assocs.*, 74 So.3d 230, 234 (La. App. 2d Cir. 2011). This initial burden applies to those insureds whose status as such is not in question and therefore have undisputed rights to seek coverage under the policy. If a bona fide insured must prove coverage, then it follows rather easily that a party like Winn-Dixie Montgomery with seemingly no privity to the insurer who seeks coverage as an insured on a policy bears the burden of proof on insured status. This conclusion is buttressed by Louisiana Civil Code article 1831, which states that "[a] party who demands performance of an obligation must prove the existence of the obligation." La. Civ. Code art. 1831; *see also WH Holdings, LLC v. ACE American Inc. Co.*, No. 07-7110, 2013 WL 2286107, *3 (E.D. La. May 23, 2013).[6]

According to Winn-Dixie Montgomery, H & L obtained a policy of insurance with Scottsdale. The policy period spanned from April 1, 2015 to April 1, 2016. (Rec. Doc. 44-10). According to Winn-Dixie Montgomery, it was provided with a certificate of insurance allegedly showing that it was an additional insured under that policy. (Rec. Doc. 44-1, p. 3) (citing Rec. Doc. 44-11). Winn-Dixie Montgomery contends that this policy names it as an additional insured, and the policy would have been in effect on the days that the work was performed by H & L. *Id.* (citing Rec. Doc. 44-10, p. 28).

---

[6] Winn-Dixie Montgomery is correct in noting that an insurer has the burden of proving that a loss comes within a policy exclusion. (Rec. Doc. 44-1, p. 13) (citing *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1252 (La. 1993)). But, where insured status is contested, such as in this case, the party seeking insured status must first bear the burden of proving so, before the burden shifts and requires the insurer to show an exclusion applies.

H & L obtained a subsequent policy from Scottsdale with a period extending from April of 2016 to April 2017—keeping in mind that Sonier's fall occurred on July 7, 2016. Winn-Dixie Montgomery was again provided with a certificate of insurance allegedly showing that it was an additional insured under that policy. *Id.* (citing Rec. Doc. 44-13). Winn-Dixie Montgomery contends that this policy names it as an additional insured, and the policy would have been in effect on the day of Sonier's accident. *Id.* (citing Rec. Doc. 44-12, p. 29).

In response, Scottsdale contends that Winn-Dixie Montgomery "falsely and repeatedly asserts that it is named as, and is, an additional insured under [the] two Scottsdale commercial general liability policies: Scottsdale Policy No. CPS2182231 issued to H & L for the period of April 1, 2015 to April 1, 2016 . . . and Scottsdale Policy No. CPS2448686 issued to H & L for the period of April 1, 2016 to April 1, 2017. . . ." (Rec. Doc. 69, p. 4). Scottsdale contends neither policy affords Winn-Dixie Montgomery coverage for the reasons more thoroughly set forth below.

As an initial matter, the Court agrees with Scottsdale's assertion that policy No. CPS2182231 is the only potentially applicable policy issued by Scottsdale based on the date of Sonier's alleged incident and injuries. (Rec. Doc. 69, p. 5). Scottsdale issued Policy No. CPS2448686 (the "Policy") to H & L providing commercial general liability coverage subject to certain terms, conditions, and exclusions for the period of April 1, 2016 to April 1, 2017. This period encompassed July 7, 2016—the date of Sonier's alleged fall.

According to both policies at issue, Section I—Coverages, 1. Insuring Agreement provides:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
b. This insurance applies to "bodily injury" and "property damage" only if:

16

>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>   (2) The "bodily injury" or "property damage" occurs during the policy period. . . .

(Rec. Doc. 44-10, p. 12); (Rec. Doc. 44-12, p. 12).

By the clear text of both policies, Scottsdale is legally obligated to pay sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance policy applies. Scottsdale also has the duty to defend the insured against a suit seeking those damages. Lastly, the text of both policies unequivocally provides that the insurance applies to "bodily injury" and "property damage" only if: "[t]he 'bodily injury' or 'property damage' occurs during the policy period." (Rec. Doc. 44-12, p. 12).

The "bodily injury" in this case occurred on July 7, 2016. With a coverage period of April 1, 2016 to April 1, 2017, Scottsdale Policy No. CPS2448686 (hereinafter the "Policy") was in effect when the "bodily injury" occurred. With the proper policy identified, the Court now turns to whether Winn-Dixie Montgomery is an insured under that Policy, and if so, whether Winn-Dixie Montgomery falls within an exclusion of coverage under the Policy.

Winn-Dixie Montgomery was not afforded coverage under the Policy as an insured. First, the Policy lists only H & L as the named insured. (Rec. Doc. 58-8, pp. 4–12). Second, the Policy covers additional entities under the "Additional Insured – Owners, Lessees or Contractors—Automatic Status when Required in Construction Agreement with You" Endorsement. (Rec. Doc. 58-8, p. 34). This Endorsement provides coverage for additional insureds with the following language:

>   **A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for

> "bodily injury", "property damage" or "personal and advertising injury" caused, In whole or in part, by:
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
> *in the performance of your ongoing operations for the additional insured.*

*Id.* (emphasis added). Moreover, the Court directs attention to the following clause in the same Endorsement:

> A person's or organization's status as an additional insured under this endorsement ends when your [H & L's] operations for that additional insured are complete.

*Id.* According to the language above, any potential standing Winn-Dixie Montgomery may have had as an additional insured ended when H & L's operations on the men's restroom were completed approximately seven months before Sonier's accident. The Policy clearly ceases providing additional entities with coverage under this Endorsement once the named insured's, H & L's, operations are completed. H & L's operations were completed approximately seven months before the alleged "bodily injury" occurred in this case.

Moreover, the Policy names Southeastern Grocers, LLC as an additional insured under an "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" Endorsement. *Id.* at p. 30. However, even if Winn-Dixie Montgomery was somehow included in this schedule as a subsidiary of Southeaster Grocers, the Policy still would not cover Winn-Dixie Montgomery. Like the "Additional Insured – Owners, Lessees or Contractors—Automatic Status when Required in Construction Agreement with You" Endorsement, this Endorsement also has a temporal element that only provides coverage to Southeastern Grocers when operations are ongoing. *Id.* Again, the "bodily injury" at issue here occurred months after H & L finished work on the men's restroom.

Finally, the Court notes that the certificates of liability insurance presented by Winn-Dixie Montgomery do not provide coverage. First, the only certificate that lists insurance policies in

18

effect at the time of the accident is the certificate found at Rec. Doc. 44-13. However, only Southeastern Grocers is listed as a "Certificate Holder." Additionally, the caption to the certificate provides:

> This Certificate is issued as a matter of information only and confers no rights upon the Certificate Holder. This Certificate does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies below. This Certificate of Insurance does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the Certificate Holder.

*Id.* Therefore, the Court finds neither of the certificates of liability insurance presented by Winn-Dixie Montgomery evidence a grant of additional insured status by Scottsdale.[7]

"When the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written." *Central Louisiana Elec. Co., Inc. v. Westinghouse Elec. Corp.*, 579 So.2d 981, 985 (La. 1991). Accordingly, Winn-Dixie Montgomery has not met its burden of showing that it is an additional insured under either Scottsdale policy. The accident at issue occurred after H & L's renovations on the men's restroom were completed. For the reasons given above, Winn-Dixie Montgomery is not afforded coverage by Scottsdale's policies. Therefore, Scottsdale is entitled to summary judgment in the form of dismissing Winn-Dixie Montgomery's third party complaint against it.

## V. Conclusion

The Court's ruling today requires Winn-Dixie Montgomery to bear the costs of its own defense in this lawsuit. As previously stated, the main demand in this lawsuit sought damages for injuries sustained in a slip-and-fall accident. The Court previously dismissed those claims on summary judgment. At the Court's pre-trial conference, the parties informed the Court that because the main demand for damages was dismissed, Winn-Dixie Montgomery's remaining

---

[7] The Court additionally notes that the certificate of liability insurance lists "Stone Insurance Company, Inc." as the "Producer," not Scottsdale. (Rec. Doc. 44-11); (Rec. Doc. 44-13).

cross-claim against H & L and third party complaint against Scottsdale seeks only attorneys' fees and additional costs of defense. All claims have now been resolved, and the Court will enter a judgment accordingly.

Accordingly;

IT IS ORDERED that **Winn-Dixie's Motion for Summary Judgment Against H & L (Rec. Doc. 43)** is **DENIED**;

IT IS FURTHER ORDERED that **Winn-Dixie's Motion for Summary Judgment Against Scottsdale (Rec. Doc. 44)** is **DENIED**;

IT IS FURTHER ORDERED that **H & L's Motion for Summary Judgment Against Winn-Dixie (Rec. Doc. 54)** is **GRANTED**;

IT IS FURTHER ORDERED that **Scottsdale's Motion for Summary Judgment Against Winn-Dixie (Rec. Doc. 58)** is **GRANTED**;

IT IS FURTHER ORDERED that the **Cross-Claim of Winn-Dixie Montgomery, LLC** against H & L Construction and Renovation, Inc. (Rec. Doc. 29) is **DISMISSED WITH PREJUDICE**;

IT IS FURTHER ORDERED that the **Third Party Complaint of Winn-Dixie Montgomery, LLC** against Scottsdale Insurance Company (Rec. Doc. 28) is **DISMISSED WITH PREJUDICE.**

August 6, 2018

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE